Good morning, Your Honor. Jose Zoledon Cepeda, San Francisco City Attorney's Office for Defendant Officer Jeffrey Luby. I'd like to reserve five minutes for rebuttal, please. Let's do our best on that, okay? Thank you. May it please the Court. The doctrine of qualified immunity gives government officials ample breathing room to make reasonable but mistaken judgments about open legal questions. In the context of law enforcement personnel faced with evolving situations requiring split-second decisions about the appropriate use of force, it requires courts to view the facts from the perspective of an officer at the scene, not with the hindsight afforded by the passage of time. In this case, during a raucous celebration in San Francisco with hundreds of drunken revelers celebrating the Warriors' championship on June 2022, Defendant Officer Luby and other police officers were working to maintain order, and they confronted an individual who, out of the blue, walked across the busy street, making a beeline in an aggressive manner directly towards a fellow police officer and attempted to make physical contact with him as the officer performed his duties in trying to help an individual who had climbed up a light pole. Despite the fact that the officer tried to move away and tried to — and told the individual to back away, the individual, Plaintiff Anthony Navarro, did not back away and instead continued to accost the officer. These facts are undisputed. At one point, Navarro pushed Defendant Officer Luby, causing — Hold on. So I think that is disputed. Yes, Your Honor. Okay. So let's be clear. At this stage of the proceedings, we have to assume their facts are correct. Yes, Your Honor. So we probably shouldn't be talking about pushing the officer. According to their version, he didn't push the officer, and the officer threw him to the ground. So let's focus on their version of the facts because we're not redoing summary judgment now. We're on this very odd procedural point. Yes, Your Honor. And I was going to get to the point — to point out the fact that that is one of the important aspects of the case. And I think it's important to take apart that particular allegation. And for these purposes, I think it's important to separate an allegation that the plaintiff makes versus what's supported by evidence. Well, but we — again, we can't get into at this stage reweighing whether summary judgment should have been granted. It sounds like that's what you're trying to ask us to do. No. No, I'm not, Your Honor. Under — as this Court has held in the State of Anderson v. March on a qualified immunity analysis, on a qualified immunity appeal, this Court can assess whether the version of the plaintiff is supported by evidence. And that's what we're asking the Court to do, to look at what the evidence actually supports on — in terms of this particular — Well, the evidence being his statement or — because that's — at this point, we have to assume and he's — that's what his statement is. His deposition testimony, Your Honor. That's what we're asking this Court to look at, his deposition testimony. And what's important to go ahead — and I have citations to the record in terms of plaintiff's deposition testimony. What plaintiff testified, and this is at exercise of record 279, is that he blacked out and did not recall one to two seconds before the takedown. And that is the key part of this. And — but do we not take the allegation in the complaint? I mean, at this stage? No, Your Honor, because the complaint was not verified. So therefore, the complaint is not evidence for purposes of summary judgment. So where in the State of Anderson, can you walk me through that case, says that we can basically disregard their version of the facts and reweigh them at this stage?  What I'm saying is that the Court — first of all, it's footnote 3 in the State of Anderson v. Marsh. Okay. And what the Court said there is that the Court can assess whether plaintiff's version is supported by evidence. I'm pulling it up right now. So it says, we have held, we may review claims that a plaintiff has presented no evidence, such that his arguments about the illegality of defendant's conduct are premised on bare allegations. So you're saying there's no evidence to support their version of it? Correct, Your Honor. And what's the basis for saying there is no evidence? Because what plaintiff relied on to support the allegation that he did not push Officer Luby, the only evidence that he had was his deposition testimony. So there is evidence. Well, what he actually — well, that brings us to what the deposition testimony actually said. And what he said is that he did not recall. And the fact that he did not recall, there's multiple cases that have held that an individual does not recall something is not the same as saying that there is not. But the fact that there's no evidence to say he wasn't pushed to the ground, there's no evidence to say — I mean, there's no evidence that he made contact with the officer either way, correct? No, that's not correct, Your Honor. There's countervailing evidence that he did make contact with the officer and that he did push the officer. Okay. But again, at this stage, we have to disregard that because, again, we're at this very limited — procedurally, we have to take their version of the facts. So, I mean, I appreciate what you're saying. There's literally none. But we — I've watched the video. You can't tell what happened. He's alleging his complaint that it did happen a certain way. And don't we have to go that way? Otherwise, I don't know what we're doing here. It's like we're just doing summary judgment all over again.  No, Your Honor. And there is more evidence than just the video. And the video is something that we're asking the Court to look at and draw its own conclusions. And I have citations. But again, we can't draw our own conclusions from it. We have to take their versions of the facts. To the extent that that version of the facts is supported by competent evidence, Your Honor, that's what the State of March holds. And besides the video, there's also additional testimony, evidence bearing on this particular issue. Both officers testified regarding this particular — Okay. But, I mean, again, I don't want to dominate the argument on this. But it seems to me that all of our cases say at this stage we cannot do what you're asking us to do. And I want to make sure I make it clear, Your Honor, that I'm not asking the Court to reweigh the evidence. I'm asking the Court to look at what it is that the plaintiff has in support of his version of — Compared to what the officer said, which is — which is weighing the evidence. I am saying is that looking at his deposition testimony, the plaintiff did not — what he testified is that he did not remember pushing the officer in the context of also stating that his memory was fuzzy. And I have — But if I don't remember doing something, isn't that evidence I didn't do it? No, Your Honor. Not — not in this particular —  Not in this particular context. First of all, what the plaintiff said is that his memory was fuzzy and that he had a — that he kind of blacked out a second or two before the incident. Right. But that's still — I mean, it may not be the best evidence, but if I say — if someone said, hey, did you punch a guy yesterday, I don't remember doing that. I think it's important. It — in a different context, in this particular case, the district court looked at a plaintiff's — plaintiff making a different — a similar allegation as to whether he was warned to back away by Officer Horton. And as the district court, we think, correctly concluded, the fact that the plaintiff said that he did not recall something does not create a triable issue of fact for summary judgment purposes. So, then, what we have — I mean, I'm trying to understand your argument here, but what we have, then, is the officers taking him down. Right. And you're saying that's not enough, even though that's consistent with what he alleges and what he later says happened. So we're just supposed to view it from that point forward, or from, you know, the officers taking him down and taking him, and then what the video showed in terms of him bent over. We're just supposed to look at that and make a determination but not redo the summary judgment on whether or not there's sufficient facts for this to go forward? I'm trying to understand your argument. No, Your Honor. What we're asking the Court to do is to — to put aside plaintiff's allegation and the complaint, because the complaint is not verified and, therefore, is not competent evidence on summary judgment, and to look at what other evidence supports his allegation. And the only other evidence that the plaintiff pointed to was his deposition testimony. And what his deposition testimony demonstrates is that he, at best, said that he did not recall something happening, but he stated that his memory was fuzzy and then he blacked out just before the takedown. And, therefore, look at the other evidence in the record regarding what happened. And we have the video evidence. We have the testimony of a third-party witness, namely the paramedic, who stated that he observed the interaction with both officers, observed plaintiff getting in the way of Officer Horton, being told to back away, not backing away, and then observed that the plaintiff did the same thing to Officer Luby, tried to make contact with him, was ordered to back away, and did not back away. And that's a pushing on Officer Luby, and that led to the takedown. That's what we're asking the Court to do. Do you need the pushing to have for him, for Luby to have acted reasonably? Because as I see it, you know, he, Mr. Navarro, went to the first officer, pushed him, was ordered to move away. And it seems uncontested to me that he then went into Luby's personal space and was immediately behind him, which, you know, is a dangerous position to be in. And so if Luby responded the way he did, that seems it doesn't matter whether or not he pushed him or not. No, Your Honor, I agree. I agree. I think that there's enough evidence with that. I think that you don't have to weigh in on this dispute of whether or not there was a pushing or not. Correct. Correct. I think that there's enough evidence for this Court to find that there was sufficient reason for Officer Luby to do the takedown and detained Officer, pardon, Mr. Navarro because he was being unruly, because he was interfering with Officer Horton, and because he refused multiple orders to back away. I also wanted to address, and Judge Murguia, you alluded to this, I think, the separate claim the plaintiff has in terms of the way he was escorted after he was taken down. As the video demonstrates, after he was taken down, Mr. Navarro was sat down by the police to wait for an escort van. And during this particular instance, he was berating the officers, he engaged in this diatribe, and he was questioning the officers. The officers tried to answer his questions, and they were asking him questions that were necessary for them to fill out the arrest forms. After the transport van arrived, Mr. Navarro was then escorted by Officer Luby towards the van. The escort took place about a total of 50 seconds. Because of Mr. Navarro's belligerent behavior, because of his intoxicated state, Officer Luby determined that it was necessary to escort him in a particular way to avoid him potentially spitting at the officers or somehow engaging in other unruly behavior. But that's a tough one, though, because he was being unruly to the officer, and so it could have been the safety purpose, or it could be retaliation. Yes, Your Honor. And but this gets to the question of what's required to demonstrate a retaliation claim. Under Jeffers v. Gomez and Bruce v. Ilse, the mere timing of an event is not enough. I don't understand why not. Because proximity, it makes total sense as evidence. It's he got engaged in, quote, unquote, protected speech, you don't allege, and then all of a sudden, seconds later, the officer uses an odd technique to transport him. Your Honor, the case law holds that mere timing is not sufficient. Proximity of events can sometimes be sufficient if there's additional evidence that is seduced. In this case --" Why can't a jury say that that's enough? That's what I don't understand. Because as the Supreme Court has held in a slightly different context in the Nieves v. Bartlett case, that the fact that officers sometimes use the speech of an individual to calibrate a particular law enforcement action, such as deciding to arrest someone, that that does not – that is not improper. That does not mean that there's a retaliation claim. There has to be more in order to establish it. Well, that seems like a qualified immunity question, the clearly established law question. How do you get – is there a case that – how do you get out of clearly established law? The fact that what the district court relied on and what Plante pointed to in terms of the retaliation claim is case law that holds that retaliating someone for their speech is a violation, but that assumes that Officer Luby acted as a result of the speech in order to retaliate, which is the question. Which is what we do. You assume step one. Assuming that there's sufficient evidence on all the elements, and we go back to the case law that says that the mere timing itself is not sufficient evidence. Okay. But assuming that – I don't believe you on that one. How do you get out of qualified immunity? Then we'd go to the fact that there's cases that hold that law enforcement can utilize the speech in order to calibrate the particular law enforcement actions, and that that case law would have demonstrated to an officer – an individual in Officer Luby's position that it was not improper under all circumstances to utilize the speech when necessary to assess whether there was a particular law enforcement action, such as a particular use of force. I see that I'm almost out of time, so I'd like to reserve the rest of my time. Okay. Thank you. Thank you. Good morning. I think I argued in front of Judge Owen, Judge Umente on Monday, and I liked it so much that I decided that I wanted to come again. Welcome back. I get your presence as well, Your Honor, so I'm happy. My name is Pat Buolna. I represent the appellees in this case. And may it please the Court, this case is troublesome just on a procedural level. As you heard counsel, he's re-arguing fact disputes that the district court found in plaintiff's favor already. And I want to note and be clear about something. He was arguing that the plaintiff didn't remember the encounter, but that's imprecise description of the deposition testimony. The plaintiff testified a deposition that he remembered walking past the officer, walking away after being told to get back. And then as he was walking, he got grabbed and thrown on the ground, hit his head, and that's when he blacked out. And I can quote the deposition testimony. It says, question, and then at the time of your interaction with Officer Horne, did you notice any other officers in the immediate proximity? Answer, not until I turned around. And then I saw Officer Luby. And then all of a sudden, and that's what I was sharing with you, I kind of blacked out because that's when I was just slammed to the ground. I saw Officer Luby just for a quick second. I turned, saw Officer Luby really quick, his face, and then all of a sudden I'm on the ground and there's all these police officers on me. It happened just like this. Question. Okay. Can you walk me through, please, once the first moment that you noticed Officer Luby, what happened? Answer. I turned around. I see Officer Luby. Then all of a sudden I'm getting thrown around and then thrown to the ground. That's when I'm saying I not blacked out, but my memory was fuzzy because of that. I was just so in shock.  So, counsel, is it undisputed that he touched Officer Horne, correct? Somewhat. And that Horne told him to get away. And that he did.  And then is it, it's undisputed then that he then walked towards Tubi, Luby, correct? Past. And he came up behind him, right? Well, so Luby's, that's like saying that I walk behind an officer that's walking past me. So Officer Luby is walking in the same direction, Officer Horne, as Officer Horne or Luby is walking past him, he goes behind him because that's where the sidewalk is. So it's undisputed that he's right behind Officer Luby. Correct. Yes. Well, they're side to side. So if you actually look at the video, and this was interesting. I noticed in the reply brief they said, oh, there must have been a touching because plaintiff's right hand went up. Well, they're actually, his left shoulder is to where Officer Luby's passing. His right arm, which allegedly could have touched him, is clearly visible on the video, not touching him. So walking past an officer is not sufficient to justify force. Well, you know, he was in his personal space behind him, which is a dangerous position to be. If I walk past the federal officer today behind him, even if I say I don't like  After you assault another officer. No, not assault because we remember it was trying to. Well, touching is an assault. It was unwelcome to touch. Sure, if I touch one of the security officers, he says, hey, I don't want to shake your hand. Okay, and then you go to another security officer and go right behind him. Then he can grab me by the head, lift me up, choke slam me on the ground without saying anything to me, and then arrest me and pull me up by my handcuffs. That, you believe, is sufficient to justify that sort of force? Why is that wrong? That is a definition of a police state. That goes against Graham v. Conner. Why? That goes against every shred of case law about the Constitution. Because there's no – there's no warning. He's complying with an – if the officer – It all happened within, like, a second. He complied with the officer. He said, get away from me. So he turns around and walks back to the sidewalk, and as he's passing by an officer because he walks behind him, he – then that's sufficient for an officer to turn around, grab him, and choke slam him to the ground? I don't think a single officer in the streets would say that they think that that is reasonable force, except for this officer who's getting sued. I mean, it's just – it's asinine. And I think it doesn't – the case law is clear on that. It's just there's no need for use of force, and there's no warning. Why not say, hey – Because he thought he was in danger. Someone walks – after he sees the officer, Navarro assaults another officer, then – you know, he does move away eventually after he's being pushed away, essentially, and then he comes – and then Navarro comes up right behind him. That's a dangerous position to be in. What's the assault? I'm sorry? What was the assault? Horton? Assault was on unwanted touching, right? Okay. So what did the plaintiff do that you consider an assault? He touched Horton. You can't go around touching officers. Okay. With his hand, with a gun, with a baton, what did he touch him with? Hands. His – he tried to shake his hand, right? That was what Officer Horton testified to. He was trying to shake his hand, and he didn't want to shake his hand, so he pushed him away. So if I walk up to an officer and try to shake his hand – Is that a definition of assault, though? Well, let's just look at what Officer Horton's reaction was. Well, just answer that question, is it? That is what assault is, but I think it's misleading to say assault, and then that could mean many different things. It could mean he – I think assault has to be when you know the person doesn't want to be touched. If I go up to give someone a high five and then, hey, you didn't make a good play, you don't deserve a high five, that's not an assault. It has to be – you have to know the person is not wanting the touching. Absolutely. And it's also worth the warrior's parade. He's running up. He's just saying what many people are doing, running up, high fiving, shaking each other's hands. That's what he testified he was doing. Officer Horton, who's the alleged victim, his reaction was shoot him away and walked on. Why would that suggest – why would an officer who was assaulted then turn his back to the assaultee? But this is – that's such a little threat. He doesn't – he shoos him away. But for this next officer, that's such a dangerous threat that if he walks – if he walks even close to me, I'm just going to – why not say something to him? Hey, don't walk next to me. Hey, don't walk close to me. Well, it seems like this discussion here is highlighting that we're weighing the need to weigh the facts. Absolutely, Your Honor. And the whole point is a lot of this is not procedurally correct, and this Court doesn't have a jurisdiction. If we're re-weighing facts, the Court has no jurisdiction. Even the counsel brought up the post-arrest force. They didn't even appeal that in their opening brief. How can we even discuss that? They don't – if you don't put something in your opening brief, it's not on appeal. And so I'll – if we can, let's go to clearly established law. Okay. Clearly established law. It's hard to start with where. Duran v. City of Douglas says you can't attack someone for being – for using obscene language. Any number of cases. That's for the retaliation claim, right? Yeah. Do you want – all right, so let's – No, I am curious about if – unless you wanted to go the assault – Well, I just wanted to see what your best case was for the – I guess what we're calling the assault and then also for retaliation. Sure. We have Mina v. Massey, which is a case from the Ninth Circuit where a woman was trying to get out her identification for an officer, and the – and then she wouldn't get it out in time, and so the officer grabbed the plaintiff and jerked her around and threw her on the ground. And the plaintiff's passive resistance of not complying quick enough with the officer's orders was held to be clearly established as excessive force. So that would be Mina v. Massey. Meredith v. Erath, where an officer was trying to get into a building and for – and the officer was trying to get in the building. They have a warrant. The person demands and won't let the officer in because they want to see the warrant. So the officer grabs her and throws her to the ground, excessive force. And these are much less used as a force and less intrusive than the force that we see here, and the injuries are less. Can I ask you about the retaliation claim? Sure. Because I do think you've proven – you've fled a violation on step one. My question is on step two on clearly established. And I think you said Duran is what cites that. But I think the one difference, though, in Duran is that they said that there was no evidence of danger to public safety, nor any evidence he had or was about to be engaged in criminal activity. Where here, that seems less clear because he was pretty disruptive while he was sitting on the ground. He's handcuffed, so he couldn't do much damage, but he wasn't compliant. So there could be danger to the officers or to the public. Well, let's just say that any – and this is from Duran. Any action to punish or deter speech such as stopping or hassling the speaker is categorically prohibited by the Constitution. Yes, but in the context where there's no evidence of danger to public safety. Well, even in the Duran case, he was in close proximity with someone that had just flipped him off and cussed him out. So you could argue that that was obscene, and the court draws this line that – I guess, though, my question is what's wrong with the argument that there was – that because he was not compliant, there was a danger to public safety here? Well, Witterowd v. Blair, Ninth Circuit case out of 2007 from in Alaska where he stopped and he's being – he has a belligerent attitude. He's not doing what the officer tells him to do and calls the officer a coward and the officer thinks he's going to hurt him or something, and then he uses extra force against him, excessive force against him. In that case, the court said because of – That in public or was that in the police station? That was in public. That was outside of his – I think outside of his car. Yes, it's a traffic violation. So right outside of his car in close proximity to potential weapons. But let's just back that up here. There's a factual, material fact dispute about whether or not the officer even had objective evidence that he was a danger. He sat the guy down in handcuffs next to him, and he didn't pat them. No one patted him down. They could have at any moment. And if he had any – if he was so unruly and belligerent, why did he let two paramedics bend down within an inch of the guy's face, evaluate him for a minute if he thought, oh, this guy's a real dangerous guy that's going to suddenly attack me, in handcuffs? A jury could say, absolutely. An officer who thought that this guy was dangerous and unruly and his speech was so bad because he had already been cussing that he was a danger or a threat, he would never let two paramedics unarmed and untrained within close proximity to him. So that's a factual dispute. And I can proceed, or, Your Honor, if either of you – or if anyone has any questions? No? Well, then I will rest at that. Thank you. I just wanted to address a few points. I think it's key, again, to look at the deposition testimony. Mr. Navarro testified that his memory was fuzzy. That's at excerpts of record 279. No, that's at excerpts of record, excuse me, 282. And he talked about blacking out just before the incident at 279. In terms of the clearly established aspect of it, the cases that Mr. Buona referred to are generally classified as what's called a passive resistance line of cases. And it's very clear in this case, as even the district court recognized, this wasn't a passive resistance case. This was a case where the individual who initiated the interaction was Mr. Navarro. He came up to the police out of the blue for no apparent reason. Now, he has his own version of why he did it, but for purposes of excessive force cases, you look at the perspective of a reasonable officer at the scene. But the officers knew. Can I ask you about when he was handcuffed? How is it — is the argument that he presented some danger when he was handcuffed? The argument, Your Honor, in terms of the retaliation aspect of the case?  The concern was that because he had to be escorted to the van and he had demonstrated one, that he had come up to the police out of the blue, the fact that he hadn't backed away, and the fact that he had been belligerent during the interaction with the officer when the officer was trying to get his personal information to write out a ticket, that there was a concern by the officer that he — and because Mr. Navarro was bloody, there was concern that he might spit at officers or he might cause other disturbance. And that was the concern that animated the — Okay. So that's why his head would be down. Correct. So he can't spit at officers. Because that was the only method to prevent — Because the concern was because if he had been walked — and this is — In a regular, upright manner? Exactly. That he could have spit at the officers, he could have done other aggressive — he could have run out into the area at the raucous event. And that is borne out as — besides Officer Luby's testimony, a use of force expert, Mr. Martin, talked about how this is an acceptable escorting technique in certain contexts. It appears to — it has a minimal risk of injury. It does appear uncomfortable on adepts, but the concern is to avoid any potential spitting at individuals and that sort of thing. And it was animated by Mr. Navarro's behavior leading up to it. I see that I'm out of time. The law was not clearly established at a minimum, both in terms of the passive resistance slice of cases and how that applies to an individual who interferes with the police, and in terms of the retaliation aspect of it. There is evidence that the handcuffing method was animated by the speech, other than mere timing. And also, on the Nieves v. Bartlett, under the Scholar's decision, in Bokoest as well, the law enforcement was not on notice that calibrating a handcuffing method in light of the speech and belligerent behavior was improper. And with that, I'll submit. Thank you. Thank you. Thank you both. Mr. Zeledon Cepeda, thank you. Mr. Buena, appreciate your oral argument and demonstration here today. The case of Anthony Navarro v. City and County of San Francisco is submitted. The last case on our docket is Christopher Kowarski v. Gen Digital, and that has been submitted on the briefs. And so, therefore, that concludes our docket for today, and we are adjourned. Thank you very much.
judges: MURGUIA, OWENS, BUMATAY